22 C. C. P. A. (Patents)

## In re DUBBS.

### Patent Appeal No. 3523.

Court of Customs and Patent Appeals.
June 3, 1935.

Charles M. Thomas and James P. Burns, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 21 to 27, inclusive, in appellant's application for a patent for an alleged invention relating to the conversion of hydrocarbon oils under heat and pressure in the presence of hydrogenating gas.

It appears from the record that for the purpose of producing so-called light products, such as gasoline, from hydrocarbon oils, there are at least two processes, namely, the cracking process, and the hydrogenation process.

Counsel for appellant state in their brief that the cracking process "is a function of time and temperature"; that the hydrogenation process is a "function of time, temperature, pressure, and injected extraneous hydrogen"; that in the cracking process there is a decomposition of the compounds of hydrogen and carbon, and the formation of new and different compounds; and that in the hydrogenation process, hydrogenating gas, "such as hydrogen," chemically unites with the original hydrocarbon compounds, the purpose of which, as stated in appellant's specification, is "making larger quantities of lighter hydrocarbons containing high percentages of saturated hydrocarbons."

Claims 21 and 27 are illustrative of the appealed claims. They read:

"21. An improved process for obtaining valuable distillate from heavy carbonaceous matter, which comprises maintaining a body of such material at a decomposition temperature while under pressure in excess of 25 atmospheres, continuously passing a mixture of the said material and a gas rich in free hydrogen through a heating zone into said body, removing vapor therefrom, partially condensing the vapor under rectifying conditions at a pressure in excess of 25 atmospheres and separately condensing a part of the remaining vapor."

"27. An improved process for obtaining valuable distillate from heavy carbonaceous matter, which comprises maintaining a body of such material at a decomposition temperature while under pressure in excess of 25 atmospheres, continuously passing a mixture of the said material and a gas rich in free hydrogen through a heating zone into said body, removing vapor therefrom, partially condensing the vapor under rectifying conditions and separately condensing a part of the remaining vapor."

Claims 21 to 26, inclusive, which were copied for interference purposes by appellant from the patent to Russell, No. 1,916,441, hereinafter more fully described, were rejected by the tribunals of the Patent Office on the ground that appellant was not entitled to make them. Claim 27 was rejected as unpatentable, in view of the prior art cited:

Bergius, 1,342,790, June 8, 1920.

Plauson (British), 182,852, July 5, 1922.

Danckwardt, 1,594,666, August 3, 1926.

Gomory, 1,670,804, May 22, 1928.

Black, 1,737,634, December 3, 1929.

Appellant's application relates to both process and apparatus. However, only process claims are involved in this appeal.

It will be observed from reading the appealed claims that claims 21 to 26, inclusive, differ from claim 27, in that they contain the limitation "partially condensing the vapor under rectifying conditions at a pressure in excess of 25 atmospheres."

Appellant's application discloses an apparatus for hydrogenating oil, wherein the oil is subjected to a decomposing temperature in a heating coil and in a primary reaction chamber, and, if desired, may be delivered to a secondary reaction chamber, "where further reaction and vapor separation occurs."

In appellant's apparatus vapors and gases may pass through a valve-controlled line from the first reaction chamber directly into the rectifying column or dephlegmator, or they may pass through a valve-controlled line from the first to the secondary reaction chamber, and then into the dephlegmator; whereas, in the structure disclosed in the drawings in the patent to Russell, the dephlegmator is mounted directly over the reaction chamber, the two being in open communication, or, as stated in his specification, they might be connected by a vapor passage "which allows substantially no drop in pressure."

The Primary Examiner assigned three grounds for the rejection of appealed claims 21 to 26, inclusive, and, although the Board of Appeals disagreed with the first two reasons assigned by him, which, accordingly, are not before us for consideration, it approved the third ground of rejection, and, with regard thereto, said:

"The third reason assigned by the examiner in view of which he believes applicant is not entitled to make claims 21–26 inclusive, is that in the apparatus of the applicant the dephlegmator is not in such open communication with the reaction zone as to permit the high degree of pressure within the terms of the appealed claims to be maintained in the dephlegmator. Each of these claims states that the body of the material is maintained at a decomposition temperature while under pressure in excess of 25 atmospheres. Claim 21 states that the rectifying conditions are at a pressure in excess of 25 atmospheres. Claims 22–25 inclusive state that the rectification conditions are at substantially full pressure which would be 25 atmospheres in view of the pressure at which decomposition takes place. Claim 26 states that the rectification zone is maintained at substantially the same pressure, that is, 25 atmospheres.

"In the Russell patent the dephlegmator 9 is mounted directly on the drum 4 so that the two are in open communication. The specification of the patent describes this arrangement and also states that the rectifying tower and drum may be connected by means of a vapor passage which allows substantially no drop in pressure. Applicant urges that the pipe 28 between the drum 18 and the dephlegmator 6 in the application is such a passage and that in the use of the apparatus the drum 25 may not be used and the valve 29 in the pipe 28 may be left open. We find no support in the original disclosure for the view that a pressure is maintained in the dephlegmator 6 which is in excess of 25 atmospheres or which is substantially equal to the pressure in the drum 18. We believe the application disclosure as filed does not form a sufficient basis for the methods defined in claims 21–26 inclusive."

It is argued by counsel for appellant that the valves which control the passage of the vapors and gases from the reaction chambers, disclosed in appellant's applica-

522

tion, control the direction of flow of such vapors and gases, but not the pressure in the dephlegmator.

It is obvious from appellant's disclosure that the process described in appealed claims 21 to 26, inclusive, *might* be carried out by appellant's disclosed apparatus. The difficulty, however, is that, although appellant stated in his specification that "the temperatures and pressures which can be used on the system cover a wide range according to the purpose of the operation," and that his specification suggests an exemplary pressure of 3,000 pounds, far in excess of 25 atmospheres, he does not affirmatively disclose the essential step of the process—"partially condensing the vapor under rectifying conditions at a pressure in excess of 25 atmospheres."

It may be observed that claims 21 to 26, inclusive, are process claims, and that appellant does not explain in his specification what he means by his "system." Furthermore, in view of the fact that there is nothing in his specification to indicate that the claimed process would be carried out in the normal and usual operation of his apparatus, and in the absence of a disclosure of the steps called for in the appealed claims, the mere fact that the apparatus disclosed by him might *permit* the carrying out of such process does not warrant a holding that he is entitled to make such claims. In re William R. Howard, 53 F. (2d) 523, 19 C. C. P. A. (Patents) 768.

We find nothing whatsoever in appellant's specification to indicate that he had any conception of partially condensing the vapor under rectifying conditions at a pressure in excess of 25 atmospheres. If he had any such conception, he certainly failed to disclose it. We are of opinion, therefore, that appellant is not entitled to make claims 21 to 26, inclusive.

With reference to claim 27, the Board of Appeals affirmed the decision of the Primary Examiner holding that the claim was unpatentable over the prior art, for the reasons stated by him. Accordingly, we must turn to the examiner's decision for an explanation of the board's decision.

We deem it unnecessary to enter upon an elaborate discussion of the references and their application to appealed claim 27. As hereinbefore stated, claim 27 differs from claims 21 to 26, inclusive, in that it does not contain the limitation that the vapor is partially condensed under rectifying conditions at a pressure in excess of 25 atmospheres.

The tribunals of the Patent Office were of opinion that the omission of such limitation made claim 27 unpatentable over the prior art.

In his decision, the examiner accurately described the references as follows:

"Gomory shows the steps of passing a mixture of hydrogen and oil through a heating zone into a body of the oil at a decomposition temperature and dephlegmation of the vapors.

"Danckwardt shows preheating a mixture of hydrogen and oil at pressures between 25 atms. (400 lbs.) to 60 atms. (page 2 line 87) in tubes 5, 4, 3, etc., and passing the mixture into the tubes 2 and 1 where the flowing body of oil is at a decomposition temperature (800° F.) (page 2 lines 80 to 84) then rectifies vapors in zone 27, where the vapors contact with cold charge oil. Clearly if the pressure in the rectification zone is disregarded Danckwardt meets all of the terms of claims 21 to 26 of Dubbs. It fully meets claim 27.

"Applicant's only argument against Black as an anticipation of the claims under applicant's broad construction is that Black does not disclose the use of a gas 'rich in free hydrogen' as defined in the file wrapper of Russell. Certainly the applicant comes no nearer to Russell's specification. Black's gas is specified to be recycled cracked gases, well known to always contain at least about 10% of free hydrogen.

"Dubb's specification makes no point about the use of free hydrogen rather it only suggests any hydrogenating agent with mild action. Hydrocarbon gases are well known to act as mild hydrogenating agents but they do so because their hydrogen is combined and not free. Thus Dubb's disclosure is further from Russell's than Black's.

"Bergius' recycled oil from the rectifier 7 would contain some dissolved hydrogen if hydrogen is soluble in oil under pressure, as it is. This oil is passed directly from vessel 10 to the pumping zone 23.

"Plauson's hydrogen generated in situ is definitely free hydrogen and it becomes admixed with the oil and added hydrogen passing through the preheating zone into the part of the vessel where it becomes a body at a decomposition temperature

whence vapors pass to the dephlegmation zone. Applicant's argument against Plauson is not substantiated."

Although counsel for appellant have, at considerable length in their brief, attempted to distinguish claim 27 from the references, and although it is argued that the limitation hereinbefore referred to contained in claims 21 to 26, inclusive, is not a patentable one, we deem it sufficient to say that we have carefully examined the references cited by the tribunals of the Patent Office, and are in full accord with them that claim 27 is not patentably distinguishable from the references.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.